PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN L. THOMAS,

      Plaintiff,

v.

JOSEPH KANE, DANIEL MANDELL, JR.,
WEEDEN A. WETMORE, RUSSELL
ANDREWS, EUGENE WALRATH, and
JOHN THWEET,

      Defendants.
_____

21-CV-971-RJA
**DECISION AND ORDER**

    *Pro se* Plaintiff, Kevin L. Thomas, has filed this Complaint seeking relief under 42 U.S.C. § 1983. He alleges that members of the City of Elmira Police Department ("EPD") and the Chemung County District Attorney's Office concealed or altered video and audio recordings of a traffic stop and car search on September 2, 2016. Docket Item 1 (the Complaint). The Complaint indicates that this occurred sometime between September 2, 2016 and September 29, 2017. *Id*. at 25-27. Plaintiff was previously granted leave to proceed *in forma pauperis* ("IFP"). *See* Docket Item 3, at 1 (Decision and Order).

    The Court directed Plaintiff to submit a response explaining why this action should not be dismissed as untimely. Docket Item 3. Plaintiff has responded, Docket Item 4 (entitled "Supplemental Complaint," but hereinafter referred to as "timeliness response"), and upon review, the Court dismisses the Complaint for the reasons stated below.

1

**DISCUSSION**

I.     **The Complaint**[1]

On September 2, 2016, EPD Officers Linehan and Brown executed a traffic stop of Plaintiff's vehicle. Docket Item 1 at 11-12. After Plaintiff refused to consent to a search of his vehicle, Linehan contacted Plaintiff's parole officer ("PO"), Pirazollo,[2] who responded to the scene. *Id*. at 19. PO Pirazollo then conducted a search of Plaintiff's vehicle and recovered "drugs." *Id*. At some point thereafter, EPD turned the evidence, including dash and body-worn camera footage and an audio recording from Linehan's police vest, over to Defendants Wetmore and Thweet of the Chemung County District Attorney's Office. *Id*. at 24.

The Complaint states that Wetmore and Thweet, acting in concert with EPD, proceeded to alter and destroy the video and audio evidence "to coincide with the narrative of criminal behavior that would be presented to a Grand Jury and the Chemung County Court to secure [Plaintiff's] conviction." *Id*. "From September 2, 2016 to September 29, 2017, the Defendants had care, custody and control of both videos and audio, [a] mobile video system recording and the recording from the alleged body worn camera." *Id*. at 25-26. The Complaint further alleges that Wetmore and Thweet presented video from Officer Brown's body-worn camera, but Brown's camera was in a "testing" phase and the footage "was not an official record for" EPD. *Id*.

Attached to the Complaint is the transcript of a pretrial hearing that was conducted on September 29, 2017 in Chemung County Court. *Id*. at 45-52. Plaintiff's defense

---

[1] This summary of the Complaint incorporates the "Factual Background" in the Court's January 28, 2022 Decision and Order, Docket Item 3.

[2] His name is also spelled "Pirazzolo" in the Complaint.

attorney, Michael Garzo, cross examined Officer Linehan.  Linehan testified that he had reviewed Officer Brown's body-worn camera video prior to the hearing.  *Id*. at 46-47.  He further testified that the EPD was "conducting trials of different body cameras" for possible purchase.  *Id*. at 47.  Officer Brown was conducting a trial of one of the two body-worn cameras issued by EPD for testing.  *Id*.  Linehan further testified that his patrol vehicle was equipped with a dashboard camera ("dash cam"), but he did not recall if he used it during the incident.  *Id*. at 48.

At this point in Linehan's testimony, Garzo advised County Court that when he requested the dash cam footage, he was "told that there was no recording of the dash cam."  *Id*. at 50.  Garzo then stated: "I'd ask that we be provided some sort of documentation from the police department to show that there in fact was no recording from September 2nd during this incident."  *Id*.  Defendant Thweet[3] responded that EPD Lieutenant Tim Dacy had "scrolled through their database from that timeframe and was unable to locate any dash cam or on-board-in-the-vehicle video from that date for" Officer Linehan.  *Id*. at 50-51.

By letters dated July 19, 2018 and May 14, 2019, the secretary to EPD Chief Kane and EPD Chief Kane, respectively, stated in response to a "Freedom of Information Law Request" ("FOIL") that no EPD officers had body-worn cameras issued to them on September 2, 2016 and that "[t]he body cams were not put into use by the [EPD] until 2017."  *Id*. at 26, 58-59 (letters).

---

[3] This name is spelled "Thweatt" in the transcript.

## II.     Statute of Limitations

The Court previously advised Plaintiff that the statute of limitations period for a claim based on the police or prosecution withholding "material exculpatory . . . evidence from a defendant," otherwise known as a *Brady* violation, *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order), is three years, *see Valdiviezo v. Greer*, No. 14-CV-4897 (KAM), 2018 WL 4863584, at *9 (E.D.N.Y. Oct. 4, 2018) ("[C]laims for manufacturing of evidence, denial of fair trial and *Brady* violations, which plaintiff seeks to bring pursuant to 42 U.S.C. § 1983, have statutes of limitations of three years." (citing *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997)), *aff'd*, 787 F. App'x 48 (2d Cir. 2019) (summary order); *see* Docket Item 3 at 2-4.  A § 1983 claim accrues when the plaintiff "knew or had reason to know of the injury which is the basis of [his] action." *Onibokun v. Chandler*, 749 F. App'x 65, 66 (2d Cir. 2019) (summary order) (internal alterations omitted) (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)).

### A.     Plaintiff's Timeliness Response

In his timeliness response, Plaintiff states that, on September 15, 2016, he requested that all videos in EPD possession be preserved, "including dash camera video." Docket Item 4, ¶ 5.  Plaintiff acknowledges Linehan's testimony that he could not recall whether his mobile video device was "on" at the time of the incident and that Lieutenant Davey confirmed in a memorandum that he was unable to locate any video footage from Linehan's vehicle. *Id.*, ¶ 8, 10.  The County Court Judge "failed to conduct a hearing to determine if a video was recorded from the mobile video system on September 2, 2016," and there was no documents or evidence concerning "the policy and procedure of the Elmira Police Department's mobile video system" presented at the September 29, 2017

4

hearing.  *Id*., ¶ 10-11.  Plaintiff asserts that although he learned on or before September 29, 2017 that there was no dash cam video, he submitted FOIL applications from July 2018 to May 2019 in which he requested information related to this incident, EPD's mobile video system, and General Order 655 ("Mobile Video Systems").  *Id*., ¶ 11-25.  On May 23, 2019, the Secretary to Chief Kane acknowledged Plaintiff's May 17, 2019 FOIL request, but Plaintiff never received a response.  *Id*, ¶ 24-26; *see* Docket Item 4 at 24.  He argues:

> It was not clear, with undisputable evidence, until June 23, 2019, upon the failure of Defendant Kane to correct the record and provide the policy and procedure for the mobile video system followed on September 2, 2016.  Defendants['] failure and actions further provides that such policy and procedure dated November 4, 2002 is the current policy and procedure and the defendants intentionally violated such policy and procedure causing harm to the Plaintiff . . . and violated his due process rights.

Docket Item 4, ¶ 27.

### B.     Analysis

The Complaint is dated August 24, 2021, Docket Item 1 at 9, and it shows that the concealment of evidence theory was available to Plaintiff nearly four years earlier on September 29, 2017, when Defendant Thweet stated that EPD could not produce the requested video footage.  *Id*. at 25-26, 45, 50 (September 29, 2017 hearing transcript).  Plaintiff acknowledges that he was aware of the facts giving rise to his claim on that date and that this action was filed more than three years later.  *Id*. at 3.[4]  However, he attempts to invoke the "continuing violation doctrine," which is an "exception to the normal knew-

---

[4] This holds true even after accounting for the period between March 20, 2020 and November 3, 2020, when the statute of limitations was tolled in New York by a series of nine COVID-19 Pandemic Executive Orders issued by former Governor Andrew Cuomo, *see Cain v. Cnty. of Niagara, New York*, No. 20-CV-1710S, 2022 WL 616795, at *5 (W.D.N.Y. Mar. 2, 2022).

or-should-have-known accrual date," *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999), for the period that he submitted FOIL requests in 2018 and 2019.

This argument fails because the conduct alleged was a discrete act, not an ongoing harm. *See Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009). In response to Plaintiff's April 22, 2019 FOIL request, Defendant Kane advised him that there was no dash cam footage of the incident. *Id*. at 3-4, 24. This was merely confirmation of the information that was revealed on September 29, 2017. The fact that Defendant Kane did not respond to Plaintiff's May 2019 FOIL request for additional information related to whether EPD followed its written mobile video system policy does not alter this finding. Furthermore, Plaintiff's response offers no circumstances under which the limitations period may be tolled, *see* N.Y. C.P.L.R. §§ 204, 207-208, and he does not show any "extraordinary circumstances" that prevented him from exercising his rights. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).

Even assuming that Plaintiff's claim is not untimely, there is an alternative ground for dismissal. To the extent that this action can be construed as implicating the validity of Plaintiff's criminal conviction, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994) (emphasis in original). Plaintiff does not allege that his conviction has been reversed or otherwise called into question. A dismissal pursuant to *Heck* is without prejudice. *Id*. at 479.

**CONCLUSION**

The Complaint is dismissed on the ground that it is untimely or barred by the favorable termination rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of Court shall enter Judgment in favor of Defendants, *i.e.*, Joseph Kane, Daniel Mandell, Jr., Weeden A. Wetmore, Russell Andrews, Eugene Walrath, and John Thweet, and shall take all steps necessary to close the case.

**SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 5, 2022
       Buffalo, NY